BENJAMIN B. WAGNER
United States Attorney
MATTHEW D. SEGAL
Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, California  95814
Telephone: (916) 554-2700

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 2:07-CR-164 MCE |
| | ) | |
| Plaintiff, | ) | |
| | ) | SENTENCING MEMORANDUM OF THE |
| v. | ) | UNITED STATES |
| | ) | |
| | ) | Date: July 28, 2011 |
| TIEN TRUONG NGUYEN | ) | Time: 9:00 a.m. |
| | ) | Court: Hon. Morrison C. England |
| Defendant. | ) | |

## I.   INTRODUCTION

In the recollection of the undersigned, his predecessor AUSA, and the case agent, this is the most egregious identity theft case in the history of this District.  The numbers are astonishing.  The Defendant had about twenty web sites to spoof financial institutions for the purpose of "phishing" people's complete identity information. PSR ¶ 32-33.  He was associated with European "carding" organizations and displayed substantial sophistication.  PSR ¶ 49.  The Defendant possessed 37,800 access devices.  PSR ¶ 47.  He also associated with European "carding" forums and created his own cards. He applied those higher-level skills with more workaday criminal interests in guns and narcotics, even while on release from another identity theft arrest.

1

The Defendant is intelligent, skilled, and perfectly willing to break the law.  A strict sentence is justified for reasons of just punishment and community protection.

The United States requests that the Court sentence the Defendant at the top of whatever Guidelines Range the Court finds is appropriate.  The PSR appears to err in its calculation of the number of victims and in the number of participants in the Defendant's crime.  If the Court agrees, the appropriate adjusted offense level would actually be five levels higher than suggested in the PSR.  That range would be Offense Level 35, Criminal History Category V:  262-327 months.

**II.   THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT**

The PSR describes a person with a broad-gauged and persistent interest in crime.  The Defendant had convictions for burglary, forgery, receiving stolen property, and controlled substances.  PSR ¶ 102.  The Defendant had the equipment of an identity thief and a drug dealer: computers, a card encoder, a fake ID, a shotgun with slugs, and an extensive home surveillance system.  PSR ¶ 2, 26-27.  When the Defendant was arrested in this case, he was actually on release from an arrest for exactly the same kind of conduct.  PSR ¶ 12-14.  But this Defendant is not just some meth-addicted postal thief.  He designed his own phishing web sites, used a card encoder, and cultivated contacts with European "carding" organizations.  In this fashion, Nguyen rose above the sort of lower-level drug-addicted criminals like Price and Ruland.  His intelligence and sophistication makes him more culpable, not less.

//

//

**III.  THE COURT SHOULD NOT EXERCISE ITS DISCRETION TO VARY FROM THE
       GUIDELINES SENTENCE.**

The Defendant's broad arguments against the fraud guideline are
arguments for another case.  For Tien Nguyen, the Guidelines are just
right.  Indeed, a repeat-offending identity thief should be grateful
not to receive an upward variance.  See United States v. Truong, 587
F.3d 1049, 1052 (9th Cir. 2009) (affirming upward variance from 70
months to 120 months for recidivist identity thief convicted of
cloning store gift cards).

As always, the Court must begin its sentencing analysis with a
correct Guidelines calculation as the "starting point and initial
benchmark." Kimbrough v. United States, 552 U.S. 85, 108 (2007);
Gall v. United States, 128 S. Ct. 586, 596-597 n.6 (2007); United
States v. Carty, 520 F.3d 984, 991 (9th Cir. Mar. 24, 2008) (en
banc).

The Defendant argues, in summary, that the Commission's work on
Section 2B.1 is not supported by empirical studies on deterrence.  He
further states that many criminal defendants have received lesser
sentences than the one recommended in the PSR.  These general
arguments against the Guideline are addressed to the Court's
discretion, and they should be disregarded on the facts of this
particular case.  An academic's opinion that Section § 2B1.1 is more
punitive than deterrence requires is no more than someone's opinion.
The Court's practical experience in sentencing and its knowledge of
the particular facts of this case allow it just as much discretion to
follow the Guideline as it has to disregard it.  See Kimbrough, 552
U.S. at 109.

The Defendant identifies other defendants around the country who

3

have received lighter sentences, and contends that he therefore

should, too.  The Ninth Circuit rejected a similar argument in <u>United</u>

<u>States v. Treadwell</u>, 593 F.3d 990, 1012 (9th Cir. 2010):

> The mere fact that Treadwell can point to a defendant convicted at a different time of a different fraud and sentenced to a term of imprisonment shorter than Treadwell's does not create an "unwarranted" sentencing disparity. For one thing, we aren't presented with the records in the cases on which Treadwell relies when he argues that other fraud defendants got off better than him.

<u>Id.</u> at 1012.  For example, one wonders who among those fraud

defendants ran his own "phishing" sites, scored to Criminal History

Category V, and bedded down with methamphetamine, a twelve-gauge

shotgun, and slug ammunition.

The Ninth Circuit instructs that the Court may not presume that

the Guidelines range is reasonable.  <u>Carty</u>, 520 F.3d at 991.  But a

below-Guidelines sentence on these facts with this Defendant would

not sufficiently reflect the seriousness of the offense, provide just

punishment, and protect the public from this particular multiple-

recidivist criminal.  18 U.S.C. § 3553(a)(2).

The Defendant's general attack on Section 2B1.1 ignores the

factors that require a strict sentence based on the particularized

facts of this case.  Under Section 3553(a), retributive justice and

incapacitation of a particular offender are legitimate functions of

sentencing, and no law review article can displace the Court's

individualized judgment about what sentence is appropriate for a

truly exceptional identity thief.

//

//

//

//

**IV.  THE DEFENDANT'S SPECIFIC OBJECTIONS ARE WITHOUT MERIT**

> **A.  The PSR Properly Employs a Wholesale-Level Analysis for "Reasonable, Expeditious" Calculation of Restitution for the Defendant's Wholesale-Level Crime.**

The Defendant's role in the offense was to capture and buy card numbers and routinely provide them his co-conspirators.  One cannot attribute particular transactions to him because his higher-level role did not require his presence at the point of sale.  To excuse the higher level criminal from providing restitution in a mass identity theft scheme would be contrary to justice.  It is also not required by the statute.

The Defendant contends that he is somehow not responsible for fraud loss unless it is directly tied to him on a transaction-by-transaction basis.  The law does not require such fine detail in a mass fraud.  This court has broad discretion in ordering restitution, so long as its analysis is within the statutory framework.  United States v. Laney, 189 F.3d 954, 966 (9th Cir. 1999).  Where a crime is committed by multiple people, the statute allows gives the Court discretion to order restitution jointly and severally for any loss that was part of the scheme, conspiracy, or pattern of criminal activity.  United States v. Foreman, 329 F.3d 1037 (9th Cir. 2003); United States v. Johnson, 132 F.3d 1279, 1286 (9th Cir. 1997); 18 U.S.C. § 3664(h).

The problem is that in a mass identity theft with multiple co-schemers, it is hard to attribute a particular transaction to a particular person.  That is the nature of the crime.  But it should not work to the Defendant's benefit that he was at the apex of a fraud crime that is hard to detect the full extent of.  It is clear that Nguyen was at the tip of an iceberg and the Probation Officer

did a reasonable job of ascertaining what actual loss lay beneath the waterline. "Where the precise amount of restitution owed is difficult to determine," the court may "reach an expeditious, reasonable determination of appropriate restitution by resolving uncertainties with a view toward achieving fairness to the victim." United States v. Gordon, 393 F.3d 1044, 1054-1055 (9th Cir. 2004), quoting S. Rep. No. 97-532, U.S.C.C.A.N. 2515, 2537.

Here, where the Defendant was certainly the wholesale-level source for identities in the WalMart scheme, it is "expeditious" and "reasonable" to hold him accountable for the losses caused by the scheme around the time that he was providing the identities. Where the Defendant hosted about 20 "phishing" web sites to trick bank customers into giving up their card numbers and PINs, it is entirely reasonable to attribute losses at that time to the Defendant. The Defendant acted at the wholesale level of the scheme. It would be unreasonable to expect retail-level proof and the law does not require it.

**B.   Calculation of Loss: PSR ¶ 47**

In Truong, a case from this District, the Ninth Circuit affirmed the application of the Sentencing Guidelines' special loss rule for access device fraud cases. 587 F.3d at 1052. The defendant in Truong argued that applying the $500-per-access-device figure exaggerated the seriousness of the offense when the Guidelines loss amount so exceeded the restitution amount. According to the Ninth Circuit, "the [lower] amount of proven actual loss" did not require reversal, "for the PSR's calculation of actual loss was relatively low only because the probation officer could not identify the many victims of Truong's fraud." Id. at 1052. That is the nature of mass

6

identity theft.  But this Defendant ran over 20 phishing sites, held over 37,800 access devices, and traded and distributed card numbers with others.  The law does not require transaction counting.  The Guidelines, and the Ninth Circuit, direct trial courts to count up the access devices and multiply them by $500 for a minimum loss amount.

The Guidelines are clear in their special rule for access devices:

Stolen or Counterfeit Credit Cards and Access Devices; Purloined Numbers and Codes. — In a case involving any counterfeit access device or unauthorized access device, loss includes any unauthorized charges made with the counterfeit access device or unauthorized access device and shall be not less than $500 per access device.

U.S.S.G. § 2B1.1, application note 3(F)(I) (emphasis added).  By its own terms, "[t]his loss is a presumed loss, setting a floor beneath which neither 'actual' nor 'intended' loss may fall." United States v. Yellowe, 24 F.3d 1110, 1113 (9th Cir. 1994) (interpreting similar language in an earlier version of the Guideline).  The Defendant's invocation of United States v. Titchell, 261 F.3d 348 (3d Cir. 2001) is unavailing because that case did not involve access devices.

The Defendant purports to make a factual objection to supposed "double counting" of access device numbers in the Government's evidence submitted to the Probation Officer.  But this "objection" is supported only by the unsworn, general averment of counsel.  There is no specific detail submitted, no evidentiary attachment, and no suggestion of an alternative number.  In light of such an insubstantial objection, the Court may rely on the Probation Officer's work on the PSR.  The Court may certainly exercise its

1  discretion to accept the work of the Probation Officer.  <u>United</u>

2  <u>States v. Berry</u>, 258 F.3d 971, 976 (9th Cir. 2001).

3  **C.   The Number of Victims is Over 250: PSR ¶ 48**

4  The Defendant cites <u>United States v. Pham</u>, 545 F.3d 712, 716

5  (9th Cir. 2008) for the proposition that the Government must prove

6  actual, pecuniary loss for the number of victims.  But <u>Pham</u> is no

7  longer the law.  The Probation Officer found that at least 10 banks

8  were victims and correctly applied <u>Pham</u>.  But under <u>current</u> law, the

9  number of victims is everyone whose credit card was used: well over

10  250.  The Defendant should receive a six-level adjustment for number

11  of victims.  U.S.S.G. § 2B1.1(b)(2)(C).

12  This new rule applies because the Guidelines Commission passed

13  Amendment 726 specifically to address the growing and serious problem

14  of identity theft.  The Defendant and the PSR ignore the new rule:

15  For purposes of subsection (b)(2), in a case involving means of
   identification "victim" means (i) any victim as defined in

16  Application Note 1; or (ii) *any individual whose means of*
   *identification was used unlawfully or without authority*.

17

18  §2B1.1, Application Note 4(E).  Under this note, "Means of

19  Identification" includes any access device.  <u>See</u> §2B1.1, Application

20  Note 1 ("Means of Identification" incorporates 18 U.S.C. §

21  1028(d)(7)); 18 U.S.C. § 1028(d)(7)(D) ("Means of identification"

22  includes access devices as defined in Section 1029(e).)[1]

23  _____

24  [1]The Government agrees with the Probation Office's use of the
   2010 Manual.  But the old rule was in effect at the time of the

25  offense.  The Ninth Circuit has not yet weighed in in the circuit
   split over whether applying the new note would violate the ex post

26  facto clause.  <u>Compare</u> <u>United States v. Demaree</u>, 459 F.3d 791, 795 (7th
   Cir. 2006) (ex post facto limits on application of new guidelines no

27  longer apply now that guidelines are merely advisory) and <u>United</u>

28  <u>States v. Barton</u>, 455 F.3d 649, 655 n.4 (6th Cir. 2006) (same); <u>with</u>

If <u>Pham</u> were still the law, the PSR would be right: there were clearly at least ten financial institutions that funded withdrawals, gave out credit, or had to spend resources in response to "phishing." That is uncontested.

### D.    Role Adjustment: ¶ 51

The Defendant takes a few chat specific chat logs and tries to argue that they generally describe the relationship between the Defendant, Price, and Ruland.  The Probation Officer considered all of the evidence together and concluded that the relationship concerned several kinds of crimes that they all committed together. Nguyen's technical expertise was essential, and he conveyed it to his co-schemers.  PSR ¶ 51.  Educating and directing an identity theft group is sufficient to justify an adjustment for managing.  <u>United States v. Koenig</u>, 952 F.3d 267, 274 (9th Cir. 1991).

At the sentencing the United States anticipates being able to show the Court that there was one more participant and that the Defendant recruited and trained him.  If that is correct, the Defendants should receive a 3-Level adjustment for managing where there were five or more participants or where the crime was otherwise extensive. § 3C1.1(b).  This should increase the adjusted offense level by one from the PSR.

### E.    Criminal History:  PSR ¶¶ 67-73

If anything, the Defendant's criminal history is understated because he never got a conviction for his 2005 Orange County case that was dismissed in light of this federal prosecution.  He was on

<u>United States v. Wethard</u>, 636 F.3d 1315, 1321 (11th Cir. 2011), <u>United States v. Ortiz</u>, 621 F.3d 82, 87 (2d Cir. 2010), and <u>United States v. Turner</u>, 548 F.3d 1094, 1099 (D.C. Cir. 2008).

1    release in that case when he was arrested here.  PSR ¶ 12-14.

2        It is no compelling objection that the Defendant "claims

3    recollection" of a different criminal history than his records

4    indicate.  The Defendant has access to the public records and has had

5    years to find corroboration for his claimed "recollection."  The

6    Defendant cites no authority for the proposition that by being

7    sentenced on one day for three separate criminal episodes he

8    effectively merged his convictions criminal history purposes.

9        Finally, the PSR correctly calculates three separate criminal

10   episodes sentenced on the same day as separate offenses.  As the PSR

11   observes, these sentences for distinct crimes were run **concurrently**.

12   There is no indication that this previous court's act of mercy

13   indicates that it is unlikely that the Defendant will commit more

14   crimes.  § 4(b)(1).  Rather, it shows that the Defendant has had one

15   second chance too many.

16   **V.    CONCLUSION**

17       The fraud in this case merits a sentence in proportion with its

18   size and sophistication.  The Defendant's persistent re-offending and

19   his interest in all kinds of crime make him an inappropriate

20   candidate for a downward variance.  The United States respectfully

21   submits that the PSR underestimates the Guidelines Range by five

22   levels and asks that the Court sentence the Defendant within the

23   range five levels higher than the PSR recommends.

24
                                   BENJAMIN B. WAGNER
25                                 United States Attorney

26
     Date:     July 22, 2011        /s/ Matt Segal
27                             By:  MATTHEW D. SEGAL
                                    Assistant United States Attorney
28

                                      10